IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates, LP, :
L&R Partnership, LLC, :
and John R. Cropper, :
                    Appellants : No. 1291 C.D. 2023
                             :
                v. : Argued: June 4,2024
                             :
East Brandywine Township, and :
Carlino East Brandywine, L.P. :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                    FILED: July 10, 2024

Brandywine Village Associates, LP (BVA), L&R Partnership, LLC (L&R), and John R. Cropper (collectively "BVA Parties") appeal from the October 3, 2023 order of the Court of Common Pleas of Chester County (trial court), which granted the motion for summary judgment filed by Carlino East Brandywine, L.P. (Developer) and East Brandywine Township (Township) and dismissed the BVA Parties' action seeking declaratory judgment and injunctive relief with prejudice.

This appeal adds yet another chapter to the procedurally complex, protracted litigation between Developer and the BVA Parties regarding the Township's November 17, 2014 condemnation of a portion of the BVA Parties' land and Developer's attempts to develop a shopping center that the BVA Parties vehemently oppose. The parties have appealed numerous times to this Court and the Pennsylvania Superior Court. The BVA Parties have filed repeated objections to Developer's land

development approvals, appealed the issuance of Developer's Highway Occupancy Permit, filed several declaratory judgment actions, including the instant action, and filed several lawsuits in federal court alleging constitutional due process and antitrust law violations, all of which encompasses a significant litigation history.[1]

The current dispute revolves around the Township's condemnation of a triangular 1.9-acre portion at the southeast end of the L&R property (1.9-acre L&R Parcel). The BVA Parties assert that the 1.9-acre L&R Parcel, which is slated to be used to install an underground sewer line and stormwater pipe for the construction of a road (the Connector Road Project), will also be used by Developer to manage stormwater from its development. The BVA Parties claim that the 1.9-acre L&R Parcel must be returned to them pursuant to Section 310(a)(1) of the Eminent Domain Code

---

[1] *See Carlino East Brandywine, L.P. v. East Brandywine Township* (Pa. Cmwlth., No. 367 C.D. 2022, filed July 11, 2023) (*Brandywine V*); **Brandywine Village Associates., LP v. East Brandwine Township Board of Supervisors (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021), 2021 WL 3046662, *reargument denied* (Sept. 9, 2021), *appeal denied*, 275 A.3d 957 (Pa. 2022) (*Brandywine IV*); *Condemnation of Fee Simple Title to 0.069 Acres of Vacant Land & Certain Easements Owned by Brandywine Village Associates* (Pa. Cmwlth., No. 1409 C.D. 2017, filed July 2, 2018), 2018 WL 3213113 (*Brandywine III*)**; *Brandywine Village Associates v. East Brandywine Township Board of Supervisors* (Pa. Cmwlth., No. 1149 C.D. 2017, filed Apr. 19, 2018), 2018 WL 1865792 (*Brandywine II*); *Brandywine Village Associates. v. East Brandywine Township Board of Supervisors* (Pa. Cmwlth., No. 164 C.D. 2017, filed Jan. 5, 2018), 2018 WL 296999 (*Brandywine I*). *See also Carlino E. Brandywine, L.P. v. Brandywine Village Associates* (Pa. Super., No. 2030 EDA 2022, filed October 2, 2023); *Carlino E. Brandywine, L.P. v. Brandywine Village Associates* (Pa. Super., No. 1194 EDA 2019, filed July 23, 2021); *Carlino E. Brandywine v. Brandywine Village Associates* (Pa. Super., No. 3388 EDA 2017, filed October 16, 2018); *Carlino E. Brandywine, L.P. v. Brandywine Village Associates & Associated Wholesalers, Inc.* (Pa. Super., No. 2558 EDA 2013, filed October 20, 2014); *Brandywine Village Associates v. East Brandywine Township*, (E.D. Pa., No. 16-5209, filed March 26, 2018) 2018 WL 1470124; **Brandywine Village Associates v. East Brandywine Township, (E.D. Pa., No. 20-2225, filed Sep. 14, 2020) 2020 WL 5517353;** *Brandywine Village Associates v. Carlino East Brandywine, L.P.*, 2023 WL 4918326 (E.D. Pa., Civil Action No. 16-5209, Aug. 1, 2023). The highlighted cases are ones that are relevant to this appeal.

(Code), 26 Pa. C.S. § 310(a)(1),[2] because by conveying to Developer an easement to use the 1.9-acre L&R Parcel for its underground sanitary sewer line and a stormwater easement, the Township "abandoned" the original public purpose for which that particular parcel was condemned.

It is Developer's position that the BVA Parties' claim that the Township abandoned the public purpose of the condemnation by consenting to installation of the sewer line and stormwater pipe on the 1.9-acre L&R Parcel was already resolved in prior judicial proceedings. Therefore, the BVA Parties are barred under the doctrine of collateral estoppel from claiming in this lawsuit that the Township's consent to installation of the sewer line and stormwater pipe on the 1.9-acre L&R Parcel confers a private benefit to Developer, which requires reversal of the condemnation and re-conveyance of the property to the BVA Parties. Developer also contends that the Township's consent to installation of underground conveyance lines on the 1.9-acre L&R Parcel that is being used to construct the road and the adjoining stormwater management facilities does not constitute abandonment of the entire Project, the purpose for which the property was condemned. Therefore, Section 310(a) of the Code does not require the return of the 1.9-acre L&R Parcel to the BVA Parties.

---

[2] Section 310(a)(1) of the Code, titled "Abandonment of Project," provides, in relevant part:

> (a) Disposition of property.--If a condemnor has condemned a fee and **then abandons the purpose for which the property has been condemned**, the condemnor may dispose of it by sale, lease, gift, devise or other transfer with the following restrictions:
>
> > (1) If the property is undeveloped or has not been substantially improved, it may not be disposed of within ten years after condemnation without first being offered to the condemnee at the same price paid to the condemnee by the condemnor.

26 Pa. C.S. § 310(a)(1) (emphasis added).

3

For the reasons that follow, we agree that the present action is barred by the doctrine of collateral estoppel and affirm the trial court's dismissal order.

## I. Background

### A. Statement of Undisputed Facts

BVA owns an 11.5-acre parcel of land containing a shopping center, which includes a food store, "Cropper's Market," near the intersection of Horseshoe Pike and North Guthriesville Road in the Township (BVA Parcel). (Reproduced Record (R.R.) at 11a.) Developer owns a 10.118-acre tract of land abutting the BVA Parcel. *Id.* at 24a. L&R owns a 10.46-acre parcel that lies north of Developer's property. *Id.* at 12a. Since 2010, Developer sought approval to develop its property with a "Giant" food market and a bank.

### 1. Memorandum of Understanding

On August 20, 2014, Developer and the Township signed a Memorandum of Understanding (MOU), in which the Township agreed to condemn the southern portion of the property owned by L&R, together with other property and easements, for the construction of a road between Horseshoe Pike and North Guthriesville Road (the Connector Road). *Id.* at 13a, 23a-35a. In exchange, Developer agreed to construct the Connector Road and dedicate it to the Township upon completion. In the MOU, the Township also agreed to grant Developer an easement to install a sewage conveyance line on the condemned property, to be assigned to the Township's Municipal Authority:

> After the Developer has received all necessary approvals to construct the Project in conformity with the Preliminary/Final Plans, has entered into any Development and Financial Security Agreements required by the Township, and the condemnations of the Condemned Property Interests are final and unappealable, the Township shall grant the Developer permission and/or [an] easement

4

across the Connector Road Parcels and the Route 322 Right[-] of[-]Way to construct the Connector Road **and, if requested by Developer, shall grant to the Developer the right to install, use, maintain, repair and replace an 8[-] inch PVC sewage conveyance line across a portion of the Connector Road Parcel and shall permit the assignment of such sewer line easement to the [Municipal] Authority**.

(R.R. at 31a-32a) (emphasis added).

The MOU attached a plan depicting the Connector Road crossing the Developer's property and L&R's property. *Id.* at 35a. The MOU plan also identified the easement for the sewage conveyance line on the condemned property formerly owned by L&R. *Id.*

## 2. The Declaration of Taking

On November 17, 2014, the Township filed a declaration of taking to condemn three different properties: (1) the 1.9-acre L&R Parcel; (2) BVA's easements to install and use the access drive and stormwater drain on Developer's property; and (3) a .069-acre portion of BVA's frontage on Horseshoe Pike. *Id.* at 37a-63a. The purpose of the taking was to construct the Connector Road and associated stormwater facilities. *Id.* at 40a. The BVA Parties filed preliminary objections to the taking, challenging the purpose and scope of the taking. They asserted that the majority of the L&R Parcel was to be used for stormwater facilities, some of which may be used by Developer to manage stormwater from its development. They argued that by allowing Developer to construct a sewer line and stormwater pipe on the 1.9-acre L&R Parcel, the Township was conferring a private benefit on Developer and, therefore, the taking was not for a public purpose and was excessive. *Id.* at 775a-76a. They also argued that

Section 204 of Pennsylvania's Property Rights Protection Act (PRPA), 26 Pa. C.S. § 204,[3] prohibits condemnation of private property for private use. (R.R. at 776a.)

On September 7, 2017, the trial court overruled the objections, concluding, *inter alia*, that Developer's occupation of the 1.9-acre L&R Parcel did not violate the PRPA because its use would be incidental to, and not change, the public purpose of the Township's condemnation to build the Connector Road and related stormwater management facilities. In the decision upholding the condemnation, the trial court noted that the condemned land will be principally consumed by the Connector Road itself, the deceleration lane, and "a stormwater pipe that will run along the southern boundary of the condemned portion of the L&R Parcel." (Trial Ct. op., 9/8/17, at 3; R.R. at 1081a.) The trial court held that Developer's use of the 1.9-acre L&R Parcel did not change the purpose in condemning the land:

---

[3] Section 204 of the PRPA, titled "Eminent domain for private business prohibited," states, in pertinent part:

> (a) Prohibition.--Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited.
>
> (b) Exception.--Subsection (a) does not apply if any of the following apply:
>
> * * * *
>
> (2) The property is taken by, to the extent the party has the power of eminent domain, transferred or leased to any of the following:
>
> * * * *
>
> > (iii) **A private enterprise that occupies an incidental area within a public project, such as retail space, office space, restaurant and food service facility or similar incidental area**.

26 Pa. C.S. § 204(a), (b)(2)(iii) (emphasis added).

6

[The BVA Parties] argue that the condemnation is not entirely intended for use as a road. Instead, the majority of the L&R Parcel will be used for stormwater facilities, some of which may be used by [Developer] to manage stormwater from its development.

* * * *

With respect to the L&R Parcel, there is no evidence that the Township's taking of the L&R Parcel was affected by [Developer's] hope that it would be able to use that site for stormwater management. Both [Township engineers] Mr. Padula and Mr. Dobson testified that, regardless of [Developer's] use of the Township stormwater facilities, both the drain pipe and the stormwater detention basin would remain the same size and in the same location.

The evidence wholly supports the conclusion that the condemnation is intended for the construction of the Connector Road. The PRPA does not apply to the project because the condemnation is intended to be used to construct a "road, street, highway, trafficway[.]" 26 Pa. C.S.[] § 204(b)(9). To the extent some land will be occupied by [Developer], that occupation is nothing more than "an incidental area within a public project, such as retail space, office space, restaurant and food service facility or similar incidental area", which is also an exception to the PRPA. 26 Pa. C.S.[] § 204(b)(2)(iii).

*Id.* at 27-28; R.R. at 1105a-06a. The trial court thus concluded that Developer's use of the 1.9-acre L&R Parcel will be incidental as defined in the PRPA and, therefore, will not change the public purpose of the taking to build the Connector Road and related stormwater management facilities. *Id.* at 42; R.R. at 1120a.

On July 2, 2018, this Court affirmed the trial court's decision that the taking served a public purpose, was not excessive, and fell within the exceptions of the PRPA, and that any benefit received by Developer was "incidental at best." *Brandywine III*, 2018 WL 3213113, at *9. We explained:

7

As the trial court found, the PRPA does not apply here because the condemnation falls within the exceptions set forth above. First, the condemnation is needed to construct a "road, street, highway, [or] trafficway[.]" 26 Pa. C.S. § 204(b)(9). To whatever extent some portion of the condemned land not used for the Connector Road will, after the condemnation, be occupied by [Developer], that occupation is nothing more than "an incidental area within a public project, such as retail space, office space, restaurant and food service facility or similar incidental area." *Id.* at § 204(b)(2)(iii). Again, this is within another exception to the PRPA. Finally, the land taken by the Township that is not to be used exclusively as a paved road is being taken in order to manage its stormwater obligations and to avoid the threat to public safety that will be caused by the location of the existing access easement once the Connector Road is built – a third exception to the PRPA. *Id.* at § 204(b)(3).

*Id.*, WL 3213113, at \*7-\*12. The Pennsylvania Supreme Court denied the BVA Parties' petition for allowance of appeal.

### 3. Developer's Approved Development Plan (the 2018 Plan)

On July 3, 2018, Developer submitted its land development plan to the Township's Board of Supervisors (Board) for approval to develop its property with a shopping center, retail space, off-street parking, stormwater management facilities, and the Connector Road. In accordance with the condemnation, Developer proposed to build the Connector Road through the eastern portion of the 1.9-acre L&R Parcel. At the request of the BVA Parties, the Board conducted four days of public hearings. BVA was granted party status to participate in the hearings. On June 7, 2019, the Board conditionally approved Developer's 2018 Plan. The BVA Parties appealed the approval of the 2018 Plan to the trial court. One of the BVA Parties' arguments was that "the Township has abandoned the purpose for which it acquired the Condemned Property." (Trial Ct. op., 4/17/2020, at 28; R.R. at 1013a.) In a decision dated April 17, 2020, the

8

trial court disagreed because the BVA Parties, after several days of hearings, adduced no evidence of the Township "abandoning" the public purpose for which it condemned the 1.9-acre L&R Parcel, concluding "[t]here is no evidence to support such a claim." *Id.* The BVA Parties decided not to challenge the trial court's denial of their argument that the Township had abandoned the purpose of the condemnation. In a decision dated July 20, 2021, this Court upheld the plan approval. *See Brandywine IV*.

### 4. BVA Parties' Federal Court Action Seeking Return of the Condemned Property

On September 14, 2020, the BVA Parties filed a lawsuit against the Township in the United States (U.S.) District Court for the Eastern District of Pennsylvania challenging the same approval of the 2018 Plan and arguing that the Township condemned their property "for the construction of a new Township street" but abandoned this purpose when "the Township agreed to convey an easement for [Developer] to exclusively use the condemned property" for "a sanitary sewer line," "a stormwater pipe" and "associated outfall facilities." *Brandywine Village Associates v. East Brandywine Township* (E.D. Pa., No. 20-2225, filed Sep. 14, 2020) 2020 WL 5517353 at *7. The BVA Parties argued that by "chang[ing] the purpose of the condemnation and dispos[ing] of the condemned L&R land" without first offering the land to the BVA Parties, the Township deprived them of their procedural and substantive due process rights. *Id.* Specifically, they complained that Section 310(a) the Code does not provide an "express process by which the abandoned property is returned to the condemnee." *Id.* at *8. They also argued that they had a constitutionally protected interest in their expectancy of an offer to re-purchase the land from the Township in the event the Township first abandoned the public purpose and then seeks

9

to dispose of the land within ten years of the condemnation under Section 310(a) of the Code.  In rejecting these arguments, the U.S. District Court explained:

> Despite the [BVA Parties'] contention the Eminent Domain Code does not provide an "express process by which the abandoned property is returned to the condemnee," **the [BVA Parties] had the opportunity to raise, and in fact did raise, their abandonment argument as an objection to the 2018 Plan.** The Township considered and rejected the [BVA Parties'] abandonment claims. [The BVA Parties] appealed the Township's decision to the Court of Common Pleas. The court rejected this same argument not for a procedural reason, but because the [BVA Parties] adduced no evidence after several days of hearings before the state court judge of the Township "abandoning" the public purpose for which it condemned their property. They had the opportunity to challenge it again in their appeal to the Commonwealth Court, but for some reason, chose not to do so. Given [the BVA Parties] have now had the opportunity in three forums to present their abandonment argument, they have been afforded "full judicial mechanisms" to review their objections to [Developer's] use of the condemned land.

*Id.* (emphasis added) (footnotes omitted).

The U.S. District Court further explained, that

> [f]or the BVA Parties' expectancy in an offer to repurchase the property to arise under Section 310 of the Eminent Domain Code, several conditions must exist: (1) the Township cannot have improved the property; (2) the Township must abandon the public purpose; (3) the Township must seek to dispose of the land; and (4) fewer than ten years must have elapsed since the condemnation.  As discussed above, **a Pennsylvania court has already ruled one of triggering events—the Township's abandonment of the public purpose—has not occurred**.

*Id.* at *9 (emphasis added).

10

Accordingly, because there was no abandonment of the public purpose of the condemnation of the 1.9-acre L&R Parcel, the U.S. District Court concluded that the BVA Parties had failed to state a claim for which relief could be granted.

**5. Township Resolution No. 3**

On March 4, 2021, the Township passed Resolution No. 3 of 2021, titled "A Resolution of the Board of Supervisors of the Township of East Brandywine, Chester County, For Return of Excess Condemned Land" (Resolution No. 3). (R.R. at 1160a.) This Township action was undertaken by a then-new two-person majority of the three-person Board of Supervisors, George Scherbak and Jason Winters. Resolution No. 3 stated that the 1.9-acre L&R Parcel was unnecessary for, and did not serve, the public purpose for which the Township had condemned it. *Id.* On August 23, 2021, the Township purported to transfer one acre of the condemned 1.9-acre L&R back to the BVA Parties by filing a "Declaration of Disposition of Land" with the trial court. *Id.* at 1151a-54a.

In December 2021, Developer filed a complaint against the BVA Parties, the Township, and Township Supervisors Scherbak and Winters, seeking, *inter alia*, to invalidate the transfer of the condemned property to the BVA Parties. *Id.* at 1032a. Developer also filed a Petition for Emergency Injunctive Relief to invalidate the transfer. *Id.* at 1163a. On April 4, 2022, and April 11, 2022, the trial court entered orders invalidating the transfer of the condemned property to the BVA Parties. *Id.* at 1163a-68a. On April 7, 2022, the Township, under newly a elected Board of Supervisors, rescinded the return of the property. On July 11, 2023, this Court, *en banc*, vacated these orders and remanded the matter to the trial court, on the basis that the trial court had granted what amounted to permanent injunctive relief in its preliminary injunction orders. *See Brandywine V*. On December 18, 2023, the trial court again

issued a preliminary injunction on remand, a decision which is currently pending on appeal in this Court at *Carlino East Brandywine, L.P. v. East Brandywine Township,* (Pa. Cmwlth., No. 79 C.D. 2024).

### B. BVA Parties' Underlying Action for Declaratory and Injunctive Relief

The BVA parties commenced this action on May 24, 2019, seeking declaratory judgment and injunctive relief.[4] The operative complaint was filed July 15, 2019. (R.R. at 927a-40a.) The BVA Parties aver as follows:

> 34. Neither the private sanitary sewer line purpose nor the private stormwater conveyance purpose was identified in the 2014 Resolution or the Declaration of Taking.
>
> 35. The sanitary sewer line for the exclusive benefit of [Developer] is a new use not contemplated in the 2014 Resolution or Declaration of Taking.
>
> 36. The underground stormwater pipe and associated outfall facilities for the exclusive benefit of [Developer] is a new use not contemplated in the 2014 Resolution or Declaration of Taking.
>
> 37. Conveying these easements to [Developer] to exclusively use the condemned section of the L&R Property constitutes disposal of the property by a sale, gift, devise or other transfer.

(Amended Complaint, ¶¶ 34-37; R.R. at 933a-34a.)

The BVA Parties seek at Count I a declaration that the Township is in violation of Section 310(a)(1) of the Code, and an injunction to prohibit the Township from disposing of the 1.9-acre L&R Parcel to Developer without first offering it to the

---

[4] This action was stayed pending resolution of the zoning appeal filed by the BVA Parties. The zoning appeal concluded in early 2022. On November 1, 2022, the trial court lifted the stay. (R.R. at 1195a.)

BVA Parties. The BVA Parties aver that, in approving the 2018 Plan,[5] the Township abandoned the public purpose for which it condemned the 1.9-acre L&R Parcel by condemning property for a public street and associated public stormwater facilities but granting Developer an easement to use it for private purposes, including a sanitary sewer line, an underground stormwater pipe, and associated outfall facilities, none of which, they claim, was identified in the original condemnation. The complaint alleges:

> 29. In July of 2018, [Developer] submitted a new land development plan for the development of [its] Property ("the 2018 Plan").

> 30. The 2018 Plan includes development of the former portions of the [BVA Parties'] and the L&R Property land, now owned by the Township through condemnation.

> 31. **The 2018 Plan does in fact use portions of the condemned L&R Property for the [C]onnector [R]oad or related stormwater improvements, which portions are not the subject of this suit. However, the 2018 Plan <u>also uses substantial portions of this condemned land for new purely private purposes benefiting only [Developer], including a sanitary sewer line, and an underground stormwater pipe and associated outfall facilities</u>.** A relevant part of the Plan showing the **new private uses** of the condemned portion of the L&R Property is attached as Exhibit 3 and is incorporated by reference as if set forth in full.

> 32. **The Board**, in a two to one decision, acting for the benefit of [Developer], **on December 6, 2018**, authorized the Board's participation in the pending preliminary land development application for the 2018 Plan as a consenting fee simple landowner and **authorized [Developer] to exclusively use portions of the L&R condemned land for**

---

[5] To reiterate, the trial court affirmed the Township's conditional approval of the 2018 Plan in its April 17, 2020 decision. This Court affirmed the trial court's decision on July 20, 2021, in *Brandywine IV*.

**its private purposes for a sanitary sewer line and an underground stormwater pipe and associated outfall facilities from its commercial development**. A copy of the December 6, 2018 Board of Supervisors' Work Session Minutes is attached as Exhibit 4 and is incorporated by reference as if set forth in full.

(Amended Complaint, ¶¶ 29-32; R.R. at 932a-33a) (emphasis and double emphasis added).

The BVA Parties assert that by approving the 2018 Plan, the Township abandoned the public purpose of the condemnation and must now offer the 1.9-acre L&R Parcel to the BVA Parties, as condemnee, pursuant to Section 310(a)(1) of the Code.[6]  The BVA Parties acknowledge that the attempts of Developer to develop this Property have been the subject of numerous land development appeals and court actions.  However, they allege that "[t]he relief sought in this suit is unique and different from the relief sought in the other actions."  (Amended Complaint at 6, n.1; R.R. at 932a.)

Developer filed a motion for summary judgment on September 27, 2022.  The Township joined in this motion on October 5, 2022.  Developer argued the BVA Parties' claim for the return of the condemned property on the grounds that it was excessive and abandoned are barred under the principle of collateral estoppel because three prior judicial pronouncements, involving the same parties, and the same subject matter, rejected the notion that the Township abandoned the 1.9-acre L&R Parcel by

---

[6] The BVA Parties seek at Count II injunctive relief to prohibit the Township from closing the access drive, except pursuant to the provisions of the Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701, and the General Road Law, Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. § 1981.  The BVA Parties did not raise a question regarding BVA's condemned easement for the access drive or any claim under the Road Law, nor did they make any argument in support of such claims.  Therefore, we find any argument regarding the trial court's ruling regarding the Road Law or the BVA Parties' easement for the access drive to be abandoned.

14

allowing Developer to install sewage and storm water conveyance lines on it. Therefore, the BVA Parties are barred from relitigating whether the taking was excessive and the purpose abandoned. Regarding the underlying merits, Developer and the Township argued that Section 310(a)(1) of the Code does not mandate the return of any portion of the condemned parcel to the BVA Parties, and Section 308 of the Code requires that declarations of relinquishment or abandonment of condemned property must be filed within two years of the date of taking. Because the BVA Parties filed this action five years of the date of taking, the relief they seek is time barred.

After hearing argument, the trial court issued an order on October 3, 2023, granting the motion for summary judgment and dismissing the action with prejudice. Although noting that the parties "had previously litigated the question of whether the taking, which underlies this matter, was excessive," and that appellate courts have made clear "beyond peradventure" the taking in this case was not excessive, the trial court granted summary judgment as to Count I, on different grounds. (Trial Ct. op., October 3, 2023, at 3, n.1). Specifically, addressing the legality of the BVA Parties' claims under Section 310(a) of the Code, the trial court concluded that the BVA Parties are not entitled to relief as a matter of law. Relevantly, the trial court found that the language of Section 310(a), *i.e.*, "abandons the purpose for which the property has been condemned," was unambiguous. It held that Section 310(a) "excludes the abandonment of **less than the entire project** on a property condemned in fee." *Id.* at 6 (emphasis added). Applying the language to the facts, the trial court found that Resolution No. 3 did not constitute an "abandonment" of the entire Connector Road Project; therefore, the Township was not required to offer the 1.9-acre L&R Parcel to the BVA Parties under Section 310(a)(1).

15

First, the trial court determined that Resolution No. 3 did not operate to dispose of the condemned property as contemplated under Section 310(a) of the Code. It pointed out the following flaws with Resolution No. 3:

> Resolution No. 3 does not identify the subject property with any specificity nor does it state whether the [P]roperty was condemned in fee. Resolution No. 3 does not state that it applies to the entire fee of any of the Property condemned by the Township. Resolution No. 3 does not state that the Township, as condemnor, has abandoned the Township street project (Connector Road Project), which is for the purpose of serving the public by facilitating safe and efficient vehicular traffic and pedestrian access between Horseshoe Pike (Route 322) and North Guthriesville Road.

(Trial Ct. op., at 3-4) (citations and footnote omitted).

The trial court concluded that "the Township never abandoned the Connector Road Project as required by Section 310(a) and the second predicate, abandonment of purpose, has not been satisfied." (Trial Ct. op., at 7.) It explained:

> Because Section 310(a) mandates that a condemnor may dispose of condemned property only "[i]f a condemnor has condemned a fee and then abandons the purpose for which the property has been condemned," the failure to satisfy either of those requirements precludes any further step towards disposition by the condemnor. The failure to abandon the Connector Road Project is a fatal defect that requires a finding that, as a matter of law, the BVA [P]arties do not have a right or interest in any portion of the condemned property pursuant to Section 310(a)(1) on which to base their claims for relief set forth in Count I.

(Trial Ct. op., at 7-8).

The trial court distinguished *Biernacki v. Redevelopment Authority of the City of Wilkes-Barre*, 66 Luz. Leg. Reg. Reports 205 (1974), *vacated on other grounds*, 379 A.2d 1366 (Pa. Cmwlth. 1977), which was the only case the trial court found that

16

addresses abandonment of less than the entire project under a repealed version of the current Code. In *Biernacki*, the common pleas court held that a section of the predecessor of the current Code did not require the abandonment of the entire project as the condition under which the municipality is required to offer to reconvey the property to the condemnee. *Id.* at 221. The trial court concluded that *Biernacki* was not persuasive because the case (1) predated the current Code by more than thirty years, and (2) the *Biernacki* court did not engage in any meaningful statutory analysis.

## II. Issues

On appeal,[7] the BVA Parties offer five arguments. They assert that (1) the trial court erred by holding that Resolution No. 3 did not operate to dispose of the condemned property; (2) the trial court erred by concluding Section 310(a) of the Code requires an entire public project to be abandoned before a condemnor may dispose of excess condemned property not used for the project; (3) the decision in *Brandywine III* that the Township's taking was not excessive is not relevant because the Township gave Developer permission to use the 1.9-acre L&R Parcel for its sewer and stormwater lines after *Brandywine III* was decided; (4) the trial court erred in distinguishing *Biernacki*; and (5) the trial court erred in not recognizing the Township's return of the excess property.

In response, Developer and the Township assert that the very issue the BVA Parties assert in this declaratory judgment action, namely, whether the taking was excessive, and the purpose of the condemnation was abandoned, has already been fully

---

[7] The Court's standard of review where a trial court has granted a motion for summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Westmoreland County v. Rodgers*, 693 A.2d 996 (Pa. Cmwlth. 1997). Summary judgment will be affirmed if there is no genuine issue of material fact, and it is evident that the moving party is entitled to judgment as a matter of law. *Id.*

17

litigated in three prior judicial proceedings. Therefore, the entire action is barred under the doctrine of collateral estoppel.[8] Specifically, Developer and the Township contend that the BVA Parties' claim in this lawsuit that the Township conferred a private benefit on Developer by consenting to installation of the sewer line and stormwater pipe on the former L&R Parcel and/or abandoned the public purpose for the condemnation was already resolved against the BVA Parties in prior judicial proceedings, including: (1) *Brandywine III* (affirming trial court's decision to overrule preliminary objections to the condemnation); (2) the trial court's April 17, 2020 decision affirming the 2018 Plan approval and rejecting the BVA Parties' contention that the Township had abandoned the purpose of the condemnation;[9] and (3) the federal court action, wherein the U.S. District Court, in dismissing the lawsuit, held that the trial court had previously determined that Township did not abandon the purpose in condemning the property.

In addition, the Developer and the Township argue that the BVA Parties' argument relating to the enforceability of Resolution No. 3 is moot because, as the BVA Parties acknowledge, the Township passed a subsequent resolution repudiating Resolution No. 3. (R.R. at 1182a.) Developer and the Township contend that because Resolution No. 3 is no longer in effect and, in fact, was repudiated, the BVA Parties' argument that this Court should enforce Resolution No. 3 must be denied as moot. Alternatively, Developer and the Township argue that the Township did not abandon the entire purpose of the condemnation by granting an easement to Developer to install

---

[8] The Township and Developer contend that this Court may affirm a trial court's order based on a different rationale if the basis for the decision is clear on the record. *Guy M. Cooper, Inc. v. East Penn School District*, 903 A.2d 608, 618 (Pa. Cmwlth. 2006).

[9] Again, the BVA Parties did not appeal the trial court's April 17, 2020 ruling that the Township had not abandoned the purpose of the condemnation for which it acquired the condemned property.

18

sewer and stormwater conveyance lines; therefore, Section 310(a) of the Code does not require the return of the condemned property.

Because we find it to be dispositive, we address the estoppel claim first.

### III. Discussion

### A. Collateral Estoppel

In Pennsylvania, the doctrine of collateral estoppel is designed to prevent the relitigation of a question of law or issue of fact, which has already been litigated in a court of competent jurisdiction. *Commonwealth Department of Transportation v. Martinelli*, 563 A.2d 973 (Pa. Cmwlth. 1989).

To invoke collateral estoppel, five elements must be present: (1) the issue decided in the prior case must be identical to the issue in the present case; (2) there was a final judgment on the merits; (3) the issue must be essential to the judgment; (4) the party against whom the estoppel is asserted must have had a full and fair chance to litigate on the merits; and (5) the party against whom the estoppel is asserted must be a party or in privity with a party in the prior case. *City of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh*, 559 A.2d 896, 901 (Pa. 1989).

Where the issue in two proceedings is the same, the fact that the relief sought in the latter of the two differs from that sought or obtained in the former will not prevent the bar by collateral estoppel of the relitigation of the issue. *Balsbaugh v. Zeck*, 500 A.2d 208 (Pa. Cmwlth. 1985). Where the controlling facts and applicable legal rules remain unchanged from the prior case, collateral estoppel may apply. *Clark v. Troutman*, 502 A.2d 137 (Pa. 1985).

Central to the BVA Parties' action for declaratory and injunctive relief is their factual claim that the Township abandoned the public purpose of the condemnation of the 1.9-acre L&R Parcel by allowing Developer to use the Township's

stormwater facilities on land taken by the Township. (Amended Complaint, ¶¶ 35-37; R.R. at 933a-34a.) They argue that because the Township has abandoned the public purpose of the condemnation of the 1.9-are L&R Parcel, it must be returned to them under Section 310(a) of the Code.

In an attempt to minimize the preclusive effect of the prior proceedings on their present attack on the condemnation's public purpose, the BVA Parties frame Developer's use of the 1.9-acre L&R Parcel for stormwater management as involving events taking place only **after** this Court affirmed the condemnation. Specifically, they assert that this "action arose from **new** factual issues **when** the Township diverted part of the Connector Road property to Developer's private stormwater and sewer use and joined Developer's application **in December 2018** and approved Developer's plans in 2019." (BVA Parties' Reply Br. at 7) (emphasis added). Along these same lines, they assert that "**[s]ince the Township's condemnation**, the Township has approved facilities on the condemned property for the sole private benefit of [] Developer." *Id.* at 3 (emphasis added). *See also* Amended Complaint, ¶ 31 ("the 2018 Plan also uses substantial portions of this condemned land for **new** purely private purposes benefiting only [Developer], including a sanitary sewer line, and an underground stormwater pipe and associated outfall facilities") (emphasis added). They also claim that

> [t]his action challenges [the] Township's December 6, 2018 resolution and December 7, 2018 letter permitting Developer to submit a development plan depicting the use the condemned property for a sanitary sewer line and multiple stormwater facilities. The Township's actions favoring Developer did not take place until all hearings in the condemnation proceeding had concluded.

(BVA Parties' Reply Br. at 5.)

In support of their contention that "conditions have changed since the condemnation case," *id.* at 6, the BVA Parties ask the Court to compare the MOU to

20

the 2018 Plan. They assert that the MOU giving rise to the condemnation permitted Developer to **ask** to build a sewer line to be conveyed to an independent authority after Developer had received all approvals and entered into land development and financial security agreements. They claim the condemnation said nothing about a Township agreement with Developer for specific facilities, and the relevant Township exhibits to the condemnation show no such facilities. *Id.* at 6. In other words, they suggest that because the condemnation only **contemplated** Developer's use of the 1.9-acre L&R Parcel for stormwater management and the 2018 Plan the Township **actually** turned the property over to Developer, the approval of the 2018 Plan differed meaningfully from the MOU and the condemnation, and this action, therefore, "arose from new factual issues." *Id.* at 7. We disagree that the Township's approval of the 2018 Plan marked a "new factual development" separate and apart from the facts addressed in the condemnation proceedings. We also reject the suggestion that the issue of abandonment of a public purpose has not been settled before now.

As noted, the BVA Parties challenged the MOU in the condemnation. The MOU expressly provided the easement to Developer to install the sewage conveyance line. (R.R. at 31a-32a.) The trial court determined in the condemnation that the Township allowed Developer to install "a stormwater pipe that will run along the southern boundary of the condemned portion of the L&R Parcel." *Id.* at 1081a. The Township's approval of the 2018 Plan and the grant of the easements to install the sewage lines and drainage lines simply reaffirmed that which was contemplated all along. The 2018 Plan necessarily continued to depict the Connector Road and the related stormwater management within the limits of the condemned property. In its approval of the 2018 Plan, the Township merely confirmed the consent it had agreed

21

to grant in the MOU and acknowledged in defense of the condemnation. It did not encompass anything new.

The BVA Parties have objected to Developer's proposed use of the 1.9-acre L&R Parcel for stormwater management from day one. Installation of Developer's sewage conveyance lines for stormwater on the 1.9-acre L&R Parcel was contemplated by all parties as early as the August 2014 MOU. The BVA Parties specifically argued in their preliminary objections to the condemnation that Developer's proposed use of part of the condemned property for its stormwater management negated the public purpose of the condemnation:

> **[The BVA Parties] argue that the condemnation is not entirely intended for use as a road. Instead, the majority of the L&R Parcel will be used for stormwater facilities**, some of which may be used by Developer to manage stormwater from its development.

(R.R. at 823a) (emphasis added).

The legality of the taking was upheld by the trial court and affirmed on appeal. As noted, the trial court overruled the preliminary objections, concluding that the condemnation, including the taking of the 1.9-acre L&R Parcel, was intended for the public purpose of constructing the Connector Road. *Id.* at 824a. This Court affirmed the trial court's decision in *Brandywine III*, holding that Developer's incidental use of the 1.9-acre L&R Parcel for a sanitary sewer line, and an underground stormwater pipe, did not mean that the taking was for a private rather than public purpose. We cannot agree that resolution of the issue should be limited to just that case, when the litigation to resolve that issue and the issue before us necessarily involves the same parties, the same ultimate issues, and the same set of facts. The fact that the relief available in the two proceedings differs does not prevent collateral estoppel from barring relitigation of the issue.

In *Miller v. Commonwealth Board of Property*, 533 A.2d 819 (Pa. Cmwlth. 1987) (*Miller II* or "the quiet title action"), Irving Miller filed a complaint styled as an action to quiet title, seeking a final decree declaring that he was the owner in fee simple of a property located at 1517-23 Spring Street (property). Previously, the Department of Transportation (DOT) had filed a declaration of taking condemning the property for the construction of the Vine Street Expressway in Philadelphia, which resulted in litigation, including an appeal to this Court. *See Miller v. Department of Transportation*, 498 A.2d 1370 (Pa. Cmwlth. 1985) (*Miller I*). *Miller I* was an appeal from the trial court's order which overruled Miller's preliminary objections to DOT's declaration of taking of the property. Miller had argued that by leasing the condemned property to the Philadelphia Parking Authority as a parking lot during the delay of construction, DOT had abandoned the public transportation purpose for condemning the property. The trial court overruled the preliminary objections and Miller appealed. The issue before this Court was whether DOT "abandoned the property or exceeded its permissible authority in condemning the fee." *Miller I*, 498 A.2d at 1373. We ultimately held that DOT did not abandon the easement it acquired by condemnation by leasing the easement as specifically permitted by its regulations. Miller then filed his quiet title action.

In the quiet title action, Miller argued once again that DOT had abandoned the purpose for which it had condemned the property, to wit, the construction of a highway, and sought a declaration that he was the owner in fee simple of the property. 533 A.2d at 820. DOT filed a motion to dismiss the quiet title action, arguing that in light of this Court's prior decision in *Miller I*, Miller's quiet title action was barred by, *inter alia*, collateral estoppel. We agreed that the quiet title action was precluded by our prior determination in *Miller I* because the subject matter of the quiet title action

23

and *Miller I* was the same, namely, the property located at 1517-23 Spring Street, and the ultimate issue in both cases was the same, *i.e.*, whether, due to the alleged abandonment of DOT's easement, ownership had reverted to Miller. *Miller II*, 533 A.2d at 821.

Here, after a careful review of both *Brandywine III* and the case at bar we conclude that the elements for application of collateral estoppel have been met. Both actions are centered on Developer's use of a portion of the condemned 1.9-acre L&R Parcel for its stormwater management. The issue decided in the condemnation proceedings (whether the taking of the 1.9-acre L&R Parcel was for Developer's private purpose) is identical to the one presented in this action (whether the taking of the 1.9-acre L&R Parcel was "abandoned" because it is being used for Developer's private purpose). Whether the taking of the 1.9-acre L&R Parel was for a private or public purpose is the same in both cases. The BVA Parties had a full and fair chance to litigate the issue, there was a final judgment on the merits, the issue was essential to that judgment, and although Developer was not a named party to the condemnation, it was in privity with the Township pursuant to the MOU. Thus, as in *Miller II*, we are constrained to conclude that, as a matter of law, the doctrine of collateral estoppel precludes the BVA Parties from relitigating the issue of the Township's alleged abandonment of the purpose of the condemnation and the return of the 1.9-acre L&R Parcel under Section 310 of the Code.

Although this resolves the issue, we will for the sake of completion, address Developer's arguments that the BVA Parties' litigation against the approved 2018 Plan and the federal litigation also bar this action under collateral estoppel.

In its appeal of the approval of the 2018 Plan, the BVA Parties raised the same issue raised here—the alleged abandonment of the public purpose of the 1.9-acre

L&R Parcel due to Developer's use of the 1.9-acre L&R Parcel to manage stormwater from its development. (R.R. at 1013a.) In fact, the BVA Parties specifically claimed in their appeal to the trial court of Developer's approved 2018 Plan violated Section 310(a) of the Code and that the 1.9-acre L&R Parcel must be returned to them under Section 310 of the Code because the Township had abandoned the public purpose for that parcel by allowing Developer to install the sewage and drainage pipes for Developer's private benefit. *Id.* at 1013a, 1145-46a. The BVA Parties had a full and fair opportunity to litigate the implications of Developer's activities on the public purpose of the taking. Based on the record created in the four hearings before the Board, the trial court disagreed because the BVA Parties presented no evidence to support the claim. The trial court, therefore, rejected the BVA Parties' argument that the Township's consent to Developer's 2018 Plan to install conveyance lines on the 1.9-acre L&R Parcel constituted abandonment of the purpose for condemning that parcel. Furthermore, the trial court rejected their argument that the mere fact that the conveyance lines were permitted to be installed on the 1.9-acre L&R Parcel was sufficient to establish the Township's abandonment of the purpose for the condemnation. The BVA Parties did not appeal the trial court's determination that the Township had not abandoned the purpose of the condemnation. This Court affirmed the trial court's April 17, 2020 decision upholding the 2018 Plan approval. *Brandywine IV*. The trial court's decision that there was no evidence to establish that the Township had abandoned the public purpose for the 1.9-acre L&R Parcel under Section 310 of the Code constitutes a decision on the merits[10] and is final and binding on the BVA

---

[10] The BVA Parties assert that the trial court never addressed the merits of their claim of abandonment holding instead that there was "no evidence" to support it. Therefore, they assert, its decision upholding the 2018 Plan did not constitute a decision on the merits. (BVA Parties' Reply Br. at 9.) We disagree. As noted, the BVA Parties chose not to present any evidence on their

**(Footnote continued on next page…)**

Parties. Again, they are barred under principle of collateral estoppel from relitigating the trial court's unappealed decision that the Township had not abandoned the purpose for the condemnation by allowing Developer to install conveyance lines on the 1.9-acre L&R Parcel.

Lastly, we agree with Developer that the U.S. District Court's dismissal of the BVA Parties' federal litigation against the Township bars the present action. Just as in this action, the BVA Parties argued that the Township had violated their due process rights by allowing Developer to install conveyance lines on the 1.9-acre L&R Parcel and that, therefore, the parcel should be returned to them under Section 310(a) of the Code. They specifically asked the U.S. District Court to return the parcel to them because the Township had allegedly abandoned the public purpose for which it condemned the parcel. One of the underlying factual issues decided in the federal case was whether the Township had abandoned the 1.9-acre L&R Parcel by allowing Developer to use it for its stormwater management. That issue is the same issue raised in this case. The U.S. District Court dismissed the claim primarily for the reason that the state courts had already determined that the 1.9-acre L&R Parcel was **not abandoned** for the reasons alleged by the BVA Parties, so for that reason their federal claims failed.

---

abandonment claim even though they had raised it before the trial as a basis to challenge the Board's approval of the 2018 Plan. Contrary to the BVA Parties' position, the application of the doctrine of collateral estoppel does not turn on whether they **did** present the merits of their claim in the prior action, but rather on whether they had the opportunity to do so. Here, they had the opportunity to present that claim. Any failure of the trial court to hear the merits of the controversy was due solely to the BVA Parties' failure to present evidence. In that situation, courts have held that for purposes of collateral estoppel, such decision constitutes a decision on the merits. *See Albright v. Wella Corp.*, 359 A.2d 460 (Pa. Super. 1976) (prior decision was a decision on the merits where the plaintiff chose in the prior proceeding not to present evidence on the same claim raised in the second case).

## IV. Conclusion

For the above reasons, we conclude that the decisions from the condemnation action, the appeal of the development plan approval to the trial court, and the federal constitutional challenge—all of which are final and binding—establish that the BVA Parties are collaterally estopped from relitigating the issue of the Township's alleged abandonment of the purpose of the condemnation and the return of the 1.9-acre L&R Parcel under Section 310(a)(1) of the Code. Based on this determination, it is unnecessary for us to analyze the BVA Parties' other allegations of error. Accordingly, we affirm the decision to dismiss the case with prejudice.

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

27

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandywine Village Associates, LP,   :
L&R Partnership, LLC,   :
and John R. Cropper,   :
                  Appellants   :    No. 1291 C.D. 2023
  :
           v.   :
  :
East Brandywine Township, and   :
Carlino East Brandywine, L.P.   :

## *ORDER*

AND NOW, this 10th day of July, 2024, the October 3, 2023 order of the Court of Common Pleas of Chester County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge